UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Gene Harney et al., | § § § § | |
| *Plaintiffs,* | § § | Civil Action No. 4:25-cv-00392 |
| v. | § § | |
| Maersk A/S, in personam, et al., | § § | |
| *Defendants.* | § § § § | |

## MEMORANDUM AND ORDER

This opinion concerns several motions that the parties have filed in this maritime personal injury suit: (1) Defendants Maersk A/S's and A.P. Møller's motion to transfer this case to the Galveston Division of this Court (Dkt. 17); (2) Defendants' motion to designate the United States Coast Guard (the "Coast Guard") as a responsible third party (Dkt. 21); (3) Plaintiffs Gene Harney's and Brittany Harney's motion to strike the Coast Guard's third-party designation (Dkt. 33); and (4) Defendants' motion to dismiss for lack of subject matter jurisdiction (Dkt. 29).

As explained below, it is ordered that Defendants' motion to transfer (Dkt. 17) is denied. But the parties failed to adequately address a critical choice-of-law issue that affects their motions relating to Defendants' invocation of Texas law to designate the Coast Guard as a responsible third party. *See*

Dkt. 21 (Defendants' motion to designate Coast Guard as responsible third party under Texas law); Dkt. 29 (Defendants' motion to dismiss or strike jury demand based on the Coast Guard's designation); Dkt. 33 (Plaintiffs' motion to strike the Coast Guard's designation). The Court thus orders expedited briefing on that issue.

## Background

Plaintiff Petty Officer Gene Harney is an active-duty member of the Coast Guard. Dkt. 1 at 1. On October 17, 2024, Harney and the crew of the Coast Guard Cutter Hatchet (the "Hatchet") were working on the Hatchet to construct a Navigation Aid in the Houston Ship Channel. *Id.* at 4. While the crew was working, the Monte Rosa, a large ship container operated by Defendant Maersk A/S and owned by Defendant A.P. Møller, passed the Hatchet. *Id.* at 2, 6. According to Plaintiffs, the Monte Rosa passed at an excessive speed, causing a wake and surge that threw the Hatchet into the Navigation Aid. *Id.* at 7. Harney was pinned between the Hatchet and the Navigation Aid, crushing his arm. *Id.*

On January 30, 2025, Plaintiffs filed this suit, claiming that Defendants were negligent and negligent per se and seeking damages. *Id.* at 9-13. Almost nine months later, Defendants filed a motion to transfer venue from the Houston to the Galveston division of this Court. Dkt. 17. Plaintiffs responded, Dkt. 18, and Defendants replied, Dkt. 19.

2

While discovery was ongoing, Defendants filed a motion to designate the Coast Guard as a responsible third party under Texas Civil Practice and Remedies Code § 33.004, Dkt. 21, to which Plaintiffs responded, Dkt. 24, and Defendants replied, Dkt. 25.  Later, Defendants moved to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction, or alternatively, to strike their jury demand.  Dkt. 29.  Plaintiffs filed a brief that responded to Defendants' motion to dismiss and moved to strike Defendants' responsible-third-party designation of the Coast Guard.  Dkt. 33.  Defendants replied in support of their motion to dismiss, Dkt. 35, and filed a response to Plaintiffs' motion to strike, Dkt. 38, to which Plaintiffs replied, Dkt. 39.[1]

## Analysis

### I.  Defendants have not shown that the Galveston Division is clearly more convenient to warrant transfer.

The first dispute concerns the proper venue.  Defendants move to transfer this case to this Court's Galveston Division, claiming that the relevant factors either favor that result or are neutral.  Dkt. 17.  Plaintiffs respond that Defendants have not met their burden to show that the Galveston Division is clearly more convenient.  Dkt. 18.  The Court agrees with Plaintiffs.

---

[1] This opinion does not address other pending motions, including the parties' cross-motions for summary judgment.

## A.    Legal standard for transfers under 28 U.S.C. § 1404(a)

Federal law authorizes courts to transfer a suit to a different venue for "the convenience of parties and witnesses" and in the "interests of justice." 28 U.S.C. § 1404(a). "Thus, while a plaintiff has the privilege of filing his claims in any judicial provision appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc) (*Volkswagen II*). "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer." *Id.* at 315.

When, as here, the suit could have been filed in a proposed transferee district, the inquiry under § 1404(a) addresses several private and public interest factors, "none of which are given dispositive weight." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("*Volkswagen I*"). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the costs of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* The public interest factors consider: "(1) the administrative

4

difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

### B.     On balance, the private factors weigh against transfer.

#### 1.     Ease of accessing sources of proof supports transfer.

"The first [private-interest] factor focuses on the location of the relevant 'documents and physical evidence' relative to the transferee and transferor venues." *In re Orion Marine Constr., Inc.*, 2020 WL 8083679, at *3 (S.D. Tex. Dec. 21, 2020) (citation omitted), *adopted by* 2021 WL 76793 (S.D. Tex. Jan. 8, 2021). "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316. "The location of evidence bears much more strongly on the transfer analysis when … the evidence is physical in nature." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (2022).

Defendants argue that this factor favors transfer to the Galveston Division because the incident occurred within that Division, the Hatchet's operational base, crew, and key documents are there, the Plaintiffs reside there, and many of Harney's medical providers are based there too. Dkt. 17 at 5; Dkt. 19 at 3. Plaintiffs disagree, contending that most of this case's evidence

is electronic, that both sides' counsel's offices are in Houston, that the vessel Monte Rosa is transient in nature and not present in Galveston, and the Monte Rosa's pilot during the incident was employed by Houston Pilots, a business whose office lies within the Houston Division.  Dkt. 18 at 4.

Defendants are correct that, even if most of the evidence is stored electronically, "this does not negate the significance of having trial closer" to where the physical evidence is located because "the critical inquiry is relative ease of access, not absolute ease of access."  *See Sandbox Logs. LLC v. Grit Energy Sols. LLC*, 2016 WL 4400312, at *3 (S.D. Tex. Aug. 17, 2016) (quotations omitted).  Where the parties' counsel is located is immaterial. *See Volkswagen I*, 371 F.3d at 206 ("The word 'counsel' does not appear anywhere in § 1404(a).").  Here, the accident occurred in the Galveston Division, the Hatchet's vessel logs, checklists, and other records are in the Galveston Division, and the vessel itself is in the Galveston Division.  *See* Dkt. 19 at 2.  Plaintiffs do not identify any specific physical or documentary evidence located in the Houston Division.  Therefore, this factor favors transfer.

### 2. Witness convenience is neutral.

"Convenience for the witnesses has been recognized as the most important factor under § 1404(a)."  *Md. Marine Inc. v. United States*, 2008 WL 2944877, at *3 (S.D. Tex. July 23, 2008) (internal quotation marks omitted). "When the distance between an existing venue for trial of matter and a

proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05.

Defendants assert that several anticipated nonparty witnesses "likely work and probably live in the Galveston Division." Dkt. 17 at 6. That vague, speculative assertion is not convincing. *See Sandbox Logs. LLC* 2015 WL 4400312, at *5 ("[V]ague statements about the convenience of unknown or unnamed witnesses are insufficient to convince this Court that the convenience of the witnesses and the parties would best be served by an intra-district transfer of venue."). Moreover, the difference in travel time is minimal. *See* Dkt. 17 at 1 (Plaintiffs live only 14 miles closer to the Galveston Division's courthouse than the Houston Division's). At best, this factor is neutral.

3.    Other practicalities weigh heavily against transfer.

"[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013). But "[p]arties seeking a change of venue should act with reasonable promptness." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quotations omitted). "[C]ourts have considered a party's delay in denying a motion to transfer." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th at 630 (quotation omitted).

Plaintiffs argue that Defendants' delay in seeking transfer weighs against transfer. Dkt. 18 at 6-8. They are correct. Defendants waited until September 23, 2025 to file their motion—almost five months after filing an answer and many months after this Court issued a scheduling order setting trial for June 29, 2026. *See* Dkt. 15 (Scheduling Order filed May 16, 2025); Dkt. 17 (motion to transfer filed September 23, 2025). Transferring the case to the Galveston Division, even at that juncture, would have delayed the trial date. This factor weighs strongly against Defendants' request.

### C. Public interest factors minimally favor transfer.

#### 1. Administrative concerns are neutral.

Defendants assert that any potential administrative difficulties arising from this litigation should be shouldered by the Galveston Division, which has a "vested interest" in the controversy. Dkt. 17 at 6-7. This argument goes to the following factor—whether the Galveston Division has a localized interest in the matter. And as Plaintiffs note, Defendants' suggestion that the Houston Division is more congested or less able to resolve this matter is purely speculative. *See* Dkt. 18 at 6. This factor is neutral.

#### 2. Local interests support transfer, but only slightly.

The local interest factor considers whether the dispute at issue has a closer "factual connection" with the transferee or transferor venue. *Volkswagen I*, 371 F.3d at 206. It "generally favors the venue where the acts

8

giving rise to the lawsuit occurred." *Spirit Airlines, Inc. v. Ass'n of Flight Attendants-CWA, AFL-CIO*, 2014 WL 585344, at \*6 (N.D. Tex. Feb. 14, 2014) (quotations omitted). This factor recognizes that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quotations omitted).

Defendants argue that Galveston has a localized interest in this dispute because the accident occurred within that division, the Hatchet is homeported in Galveston, and the Plaintiffs reside there. Dkt. 17 at 6. The Court agrees that, to the extent there is a localized interest in this case, that interest is stronger in Galveston than in Houston. This factor slightly favors transfer.

Ultimately, though, neither this factor nor the relative ease of accessing documents (addressed above) is enough to outweigh the practical concerns that Defendants' tardiness in requesting transfer would delay the resolution of this case. Put another way, Defendants have not shown that the factors *clearly* favor transferring this case to Galveston. The motion to transfer is denied.

## II. The parties must show cause why Texas law has any bearing on Plaintiffs' maritime tort claims.

In a series of other motions, the parties debate whether Defendants should be allowed to designate the Coast Guard as a responsible third party under Texas Civil Practice & Remedies Code § 33.004, Dkt. 21, whether such a designation would merit dismissing Plaintiffs' claims or striking their jury

9

demand, Dkt. 29, and whether any such designation should be stricken as unsupported by adequate evidence, Dkt. 33. But nowhere have the parties addressed the threshold issue of why Texas's proportionate responsibility statute would apply to Plaintiffs' maritime claims that instead are governed by federal maritime law.

Defendants merely assume that Texas's proportionate responsibility statute governs because Plaintiffs invoked diversity jurisdiction. Dkt. 21 at 2. And Plaintiffs, in a single, unadorned sentence, insinuate that the statute does not apply because it is "procedural." *See* Dkt. 24 at 1. Neither position is persuasive.

Plaintiffs' characterization of the Texas statute as "procedural" cannot be squared with the Fifth Circuit's treatment of Texas's entire proportionate responsibility scheme in chapter 33 of the Texas Civil Practice & Remedies Code—including Section 33.004—as "Texas substantive law ...." *See Le v. United States*, 138 F.4th 264, 273-74 & nn.21, 33-35 (5th Cir. 2025) (analyzing liability findings under Texas law, including evidence against designated responsible third party). Even more explicitly, this Court has repeatedly recognized Section 33.004 as "state substantive law that does not conflict with Rule 14 of the Federal Rules of Civil Procedure, the closest federal procedural counterpart." *Gutierrez v. Tractor Supply Co.*, 2018 WL 3055752, at *1 (S.D.

10

Tex. June 20, 2018) (quotations omitted); *see also, e.g.*, *Benchellal v. Okonite Co., Inc.*, 2023 WL 9105695, at *1 (S.D. Tex. Nov. 28, 2023) (collecting cases).

But both sides seem to assume that Texas's proportionate responsibility scheme, if substantive state law, would apply here simply because Plaintiffs invoked diversity jurisdiction, 28 U.S.C. § 1332, as the basis for bringing this case in federal court. Yet they cite no authority explaining why *Texas* substantive law should govern Plaintiffs' *federal* maritime claims.[2]

Maritime tort claims can be filed in federal court based on either diversity jurisdiction or admiralty jurisdiction. *See Luera v. M/V Alberta*, 635 F.3d 181, 188 (5th Cir. 2011) (explaining the procedural consequences for each option). Nevertheless, the U.S. Supreme Court made clear, decades ago, that even if jurisdiction over maritime claims is premised on diversity, the claims themselves are governed by general maritime law—and *not* state law. *See Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 410-11 (1953) (rejecting assertion that a state's contributory negligence rule should apply to a maritime tort claim brought via diversity jurisdiction); *Branch v. Schumann*, 445 F.2d

---

[2] Defendants' invocation of Texas's proportionate responsibility statute is especially confounding given their recognition that general maritime law governs Plaintiffs' *in rem* claims. *See* Dkt. 30 at 2 (Defendants' motion for partial summary judgment, asserting that general maritime law governs Plaintiffs' *in rem* claims); *cf. Nunez v. City of Corpus Christi*, 2013 WL 164045, at *1 (S.D. Tex. Jan. 14, 2013) ("Chapter 33, the Texas Proportionate Liability Act, applies to all torts *governed by Texas law*.") (emphasis added).

175, 177-78 (5th Cir. 1971) (explaining that if admiralty jurisdiction applies, "then all of the substantive rules and precepts peculiar to the law of the sea become applicable"). To hold otherwise would allow a plaintiff to "elect whether the liability of the defendant shall be determined by the maritime law or by the common law standards of the state" which would "defeat the uniformity which the Constitution requires in such cases." *J.B. Effenson Co. v. Three Bays Corp.*, 238 F.2d 611, 615 (5th Cir. 1956) (citing *Chelentis v. Luckenbach S.S. Co.*, 247 U.S. 372 (1918)).

The parties failed to address the threshold choice-of-law issue. And this Court will not risk applying the wrong legal framework simply because it was not adequately briefed. Accordingly, the parties must file short supplemental briefs—on an expedited schedule—explaining what, if any authority, supports or negates applying Texas's proportionate responsibility scheme—which is substantive state law—to Plaintiffs' maritime claims that are instead governed by federal maritime law.

## Conclusion

For the foregoing reasons, it is **ORDERED** that Defendants' motion to transfer (Dkt. 17) is **DENIED**.

It is further **ORDERED** that the parties must file a supplemental brief (maximum 5 pages), that explains, together with supporting legal authority, whether Texas's proportionate responsibility scheme—which is deemed to be

12

substantive state law—should apply to Plaintiffs' maritime claims that are governed by federal maritime law. The briefing deadlines are as follows:

- Defendants' brief is due **May 20, 2026**.

- Plaintiffs' brief is due **May 27, 2026**.

No reply brief will be entertained.

Signed on May 13, 2026, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge